UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GOTFRIED JEAN,

                         Plaintiff,

                                    9:09-CV-0430
              v.                          (MAD/GHL)

C.O. BARBER, *et al.*,

                         Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

GOTFRIED JEAN, 00-A-3295
Plaintiff, *pro se*
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. ERIC T. SCHNEIDERMAN               ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

       This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, Gotfried Jean ("Plaintiff") alleged that Defendants C.O. Barber, Sgt. Christopher, and Superintendent Graham violated his Eighth and Fourteenth Amendment rights by failing to provide him with mental health services prior to a suicide attempt.

       On July 10, 2009, Superintendent Graham filed a Motion to Dismiss. Dkt. No. 13. By Order filed January 11, 2010, Judge David N. Hurd granted the motion, dismissing all claims against Superintendent Graham. Dkt. No. 20.

Currently pending before the Court is Defendant Barber and Defendant Christopher's motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 39. Plaintiff opposes the motion. Dkt. Nos. 46, 48-50. For the reasons that follow, I recommend that the motion be granted.

## I. BACKGROUND

### A. Factual Background

Plaintiff alleges in his complaint that his Eighth and Fourteenth Amendment rights were violated during his confinement at Auburn Correctional Facility ("Auburn C.F."). Complaint (Dkt. No. 1) at 4. Briefly, on December 16, 2006, while in his cell, Plaintiff told Defendant Barber that he wanted to commit suicide. *Id.* Plaintiff alleges that he then saw Defendant Christopher, who told Plaintiff that there was nothing wrong with him and that he should "do [his] time like a man," and told Defendant Barber not to call "any mental health staff." *Id.* at 4-5. Plaintiff claims that one or two hours later, he again told Defendant Barber that he wanted to commit suicide, but Defendant Barber said nothing and walked away. Jean Dep. (Dkt. No. 39-3 (Ex. A)) at 10. Later that day, Plaintiff attempted to commit suicide by "trying to sever [his] arm off with a can top." Complaint at 5. Plaintiff cut his arm five times. Jean Dep. at 12. A non-defendant officer arrived and took Plaintiff to receive medical attention. *Id.* at 13. Plaintiff was placed in a cell in the Mental Health Unit ("MHU") at Auburn C.F. and later spoke to a non-defendant individual from the Office of Mental Health ("OMH"). *Id.* at 14. Plaintiff was then released to the Special Housing Unit. *Id.* at 16.

### B. Summary of Grounds in Support of Defendants' Motion

Defendants argue that (1) Plaintiff cannot prevail on his Eighth Amendment claim because Defendants were not deliberately indifferent to Plaintiff's serious medical needs; and (2) Defendants

are entitled to qualified immunity. Defs.' Memo. of Law (Dkt. No. 39-7).

      **C.**      **Summary of Plaintiff's Response to Defendants' Arguments**

In response, Plaintiff argues that (1) Defendants were deliberately indifferent to Plaintiff's serious medical needs; and (2) Defendants are not entitled to qualified immunity. Plaintiff's Response (Dkt. No. 46).

**II.**      **LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).

The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball*

---

[1] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

*Props., Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).

**III.     ANALYSIS**

    **A.     Eighth Amendment**

Plaintiff alleges that Defendants acted with deliberate indifference in violation of his Eighth Amendment rights by leaving Plaintiff in his cell after he threatened to commit suicide. Complaint (Dkt. No. 1) at 5. Plaintiff alleges that he saw a mental health officer only after he injured himself. *Id.*

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care. *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate

indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

### 1. Serious Medical Need

Defendants argue that Plaintiff is unable to satisfy the objective component because Plaintiff cannot establish that he suffered from a serious medical need. Defs.' Memo. of Law at 2. Defendants point out that "there is no claim that the plaintiff suffered from any diagnosed mental health issue either before or after December 16, 2006." *Id.* (citation omitted). Plaintiff asserts that his suicide threat and his self-inflicted wounds "are consistent with a serious medical need." Jean Memo. of Law at 5.

" 'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Although there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). An inmate need not "demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do[es] [this Court] require a showing that his or her condition will degenerate into a life threatening one." *Id.* at 163. This "'component of an Eighth Amendment claim is . . . [necessarily] contextual' and fact-specific." *Smith*, 316 F.3d at 185 (quoting *Hudson*, 503 U.S. at 8). Thus, the "serious medical need inquiry

5

must be tailored to the specific circumstances of each case." *Id.*

In *Hamilton v. Smith*, No. 06-CV-805 (GTS/DRH), 2009 WL 3199531, at *14 (N.D.N.Y. Jan. 13, 2009), Magistrate Judge Homer found that the plaintiff's "contentions that he had a history of suicidal thoughts" were "sufficient to raise a question of fact as to a serious medical need." Here, whether Plaintiff experienced previous suicidal thoughts is somewhat unclear. When asked whether he had any suicidal thoughts prior to the date of the incident, Plaintiff responded somewhat ambiguously by stating: "**Not any that I** - - no." Jean Dep. at 8 (emphasis added). Given this ambiguity, and in light of my obligation to resolve all ambiguities and draw all reasonable inferences against the moving party, especially where Plaintiff asserts civil rights violations and is proceeding *pro se*, I find that a question of fact has been raised as to a serious medical need.

### 2.     Deliberate Indifference

Defendants argue that even if Plaintiff had a serious medical need, they were not deliberately indifferent to that need. Defs.' Memo. of Law at 2-4. Defendants are correct.

Defendants are not medical personnel. "Non-medical personnel engage in deliberate indifference where they intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to attendant prison personnel." *Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999) (Scullin, J., adopting Report-Recommendation of Sharpe, M.J.). Here, there is no indication that Defendants *intentionally* delayed access to medical care. Instead, the record shows that Defendants responded quickly to Plaintiff and took steps to assist him.

When Plaintiff told Defendant Barber at approximately 7:00 a.m. that he wanted to commit suicide, Defendant Barber "immediately informed the first officer on the shift, who then informed

[Defendant] Christopher." Barber Dec. at ¶ 5. The logbook entry confirms that Defendant Barber conveyed this information and that Defendant Christopher was notified at 7:10 a.m. Ex. F. Defendant Christopher saw Plaintiff at approximately 7:50 a.m. Christopher Dec. at ¶ 4. Defendant Barber continued to observe Plaintiff until the conclusion of his shift at 3:00 p.m. Barber Dec. at ¶ 8. Plaintiff cut his arm after Defendant Barber finished his shift. *Id.* at ¶ 7; Jean Dep. at 10.

In addition, this Court has previously surveyed case law around the country and found that "in the context of suicide, jailers are not required to safeguard every inmate; only those presenting a 'strong likelihood of suicide' are entitled to protection." *Burke v. Warren County Sheriff's Dep't*, No. 900-CV-597, 1994 WL 675042, at *6 (N.D.N.Y. Nov. 25, 1994) (Munson, J.) (citations omitted). "In order to establish a strong likelihood of suicide, a detainee must have made a previous threat of or an earlier attempt at suicide." *Id.* (citing *Elliott v. Cheshire County*, 940 F.2d 7, 11 (1st Cir. 1991) ("In the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation that has concluded that failing to prevent a suicide constitutes deliberate indifference."); *Buffington v. Baltimore County*, 913 F.2d 113, 119 (4th Cir. 1990) (liability could not be premised on the officers' failure to act on a speculative suicide risk); *Rellergert v. Cape Girardeau County*, 724 F. Supp. 662, 666 (E.D.Mo. 1989) ("Obviously, in the absence of a previous threat or an earlier attempt at suicide, official misconduct in failing to prevent a suicide does not constitute deliberate indifference.").

Since Plaintiff had made no previous threat of suicide and given the Defendants' prompt responses to Plaintiff on the day at issue, I find no genuine issue of material fact showing that Defendants were deliberately indifferent. Accordingly, I recommend that Defendants' motion for summary judgment dismissing Plaintiff's Eighth Amendment claim be granted.

### B.     Due Process Claim

Plaintiff also asserted a Fourteenth Amendment due process claim based on the same allegations as the Eighth Amendment claim in his complaint. Defendants fail to address the Fourteenth Amendment in their moving papers.

Where, as here, a plaintiff's Eighth Amendment and Fourteenth Amendment due process claims "'overlap,' the due process claim will be subsumed by the Eighth Amendment claim as the Eighth Amendment offers greater protection to prisoners." *Rodriguez v. Morton*, No. 04 Civ. 3787, 2009 WL 414033, at *9 (S.D.N.Y. Feb. 13, 2009) (citing *Felix-Torres v. Graham*, 521 F. Supp. 2d 157, 164 (N.D.N.Y. 2007) (Homer, M.J.) (quoting *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("any protection that 'substantive due process' affords convicted prisoners against excessive force is ... at best redundant of that provided by the Eighth Amendment")); *see also Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ("where the deliberate use of force is challenged as excessive and unjustified, ... the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishment Clause")).

Here, Plaintiff's complaint alleges overlapping Eighth and Fourteenth Amendment violations. Since the Eighth Amendment offers greater protection to prisoners, Plaintiff's Fourteenth Amendment claim is subsumed. Therefore, I recommend that this claim be dismissed.

### C.     Qualified Immunity

Defendants argue that even if Plaintiff's constitutional claims are substantiated, they are entitled to qualified immunity. Defs.' Memo. of Law at 4-6. In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's]

conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201(2001), modified by *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 811 (2009) (holding that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory in all cases"). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. This Court need not address qualified immunity with respect to Plaintiff's various causes of action because, as discussed above, he has not established any violations of his constitutional rights.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 39) be **GRANTED**; and it is further

**ORDERED**, that the Clerk serve copies of the electronically-available-only decisions cited herein on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: June 28, 2011
      Syracuse, New York

George H. Lowe
United States Magistrate Judge