**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**GOTFRIED JEAN,**

                                        **Plaintiff,**

    **vs.**                                                    **9:09-cv-430**
                                                                **(MAD/GHL)**

**C.O. BARBER, Correctional Officer, Auburn**
**Correctional Facility; SGT. CHRISTOPHER,**
**Auburn Correctional Facility; and**
**SUPERINTENDENT GRAHAM, Auburn**
**Correctional Facility,**

                                        **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**GOTFRIED JEAN**
**00-A-3295**
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**              **ADRIENNE J. KERWIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 10, 2009, plaintiff *pro se* filed the present action, alleging that he was denied

adequate medical care, in violation of his Eighth and Fourteenth Amendment rights, when

defendants failed to provide him with mental health services prior to a suicide attempt. *See* Dkt.

No. 1. In a Report-Recommendation and Order dated June 28, 2011, Magistrate Judge Lowe

recommended that the Court grant defendants' motion for summary judgment and dismiss the complaint. *See* Dkt. No. 52.[1]

Currently before the Court are plaintiff's objections to Magistrate Judge Lowe's June 28, 2011 Report-Recommendation and Order.[2]

## II. BACKGROUND

**A.      Factual background**

In his complaint, plaintiff alleges that his Eighth and Fourteenth Amendment rights were violated during his confinement at the Auburn Correctional Facility ("Auburn C.F."). *See* Dkt. No. 1 at 4. Specifically, plaintiff alleges that, on December 16, 2006, while in his cell, he told defendant Barber that he wanted to commit suicide. *See id.* Plaintiff alleges that he then saw defendant Christopher, who told him that there was nothing wrong with him and that he should "do [his] time like a man." *See id.* at 4-5. Thereafter, plaintiff alleges that defendant Christopher told defendant Barber not to call "any mental health staff." *See id.* One or two hours later, plaintiff again told defendant Barber that he wanted to commit suicide, but defendant Barber said nothing and walked away. *See* Dkt. No. 39-3 at 10.

---

[1] By Order dated January 11, 2010, Judge David N. Hurd granted defendant Graham's motion to dismiss and dismissed him from the case. *See* Dkt. No. 20.

[2] Plaintiff labeled his objections to Magistrate Judge Lowe's Report-Recommendation and Order as a "Notice of Appeal" and stated that he is hereby appealing Magistrate Judge Lowe's decision "to the United States Court of Appeal[s] for the Second Circuit." *See* Dkt. No. 53 at 1. Throughout the filing, however, plaintiff repeatedly states that he "objects to the Report and Recommendation" in general and then "objects" to specific findings made by Magistrate Judge Lowe. *See id.* at 2-3. In light of plaintiff's *pro se* status and the fact that "a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point," *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citation omitted), the Court will treat plaintiff's filing as timely filed objections to Magistrate Judge Lowe's June 28, 2011 Report-Recommendation and Order.

Later that day, plaintiff attempted to commit suicide by "trying to sever [his] arm off with a can top." *See* Dkt. No. 1 at 5.  Plaintiff cut his arm five times.  *See* Dkt. No. 39-3 at 12.  At that point, a non-defendant officer arrived and took plaintiff to receive medical attention.  *See id.* at 13.  Plaintiff was placed in a cell in the Mental Health Unit ("MHU") at Auburn C.F. and later spoke to a non-defendant individual from the Office of Mental Health ("OMH").  *See id.* at 14. Thereafter, plaintiff was released to the Special Housing Unit.  *See id.* at 16.

In his complaint, plaintiff alleges that defendants acted with deliberate indifference in violation of his Eighth Amendment rights by leaving him in his cell after he threatened to commit suicide.  *See* Dkt. No. 1 at 5.  Plaintiff claims that he saw mental health personnel only after he injured himself.  *See id.*  Moreover, plaintiff asserts that his suicide threat and his self-inflicted wounds "are consistent with a serious medical need."

On October 1, 2010, the remaining defendants moved for summary judgment.  *See* Dkt. No. 39.  In their motion, defendants argued that (1) plaintiff cannot prevail on his Eighth Amendment claim because defendants were not deliberately indifferent to plaintiff's serious medical needs; and (2) they are entitled to qualified immunity as to each of plaintiff's claims.  *See* Dkt. No. 39-7 at 2-6.

## B.      Magistrate Judge Lowe's Report-Recommendation and Order

In his Report-Recommendation and Order, Magistrate Judge Lowe found that it was unclear whether plaintiff experienced any previous suicidal thoughts.  *See* Dkt. No. 52 at 6. Citing to his obligation to resolve all ambiguities and draw all reasonable inferences against the non-moving party, however, Magistrate Judge Lowe still recommended that the Court find that a

question of fact has been raised as to whether plaintiff suffered from a sufficiently serious

medical need.  *See id.*

Regarding deliberate indifference, Magistrate Judge Lowe recommended that the Court

find that "there is no indication that Defendants *intentionally* delayed access to medical care.

Instead, the record shows that Defendants responded quickly to Plaintiff and took steps to assist

him."  *See id.*  Specifically, Magistrate Judge Lowe set forth the following in support of his

conclusion:

> When Plaintiff told Defendant Barber at approximately 7:00 a.m.
> that he wanted to commit suicide, Defendant Barber "immediately
> informed the first officer on the shift, who then informed
> [Defendant] Christopher."  Barber Dec. at ¶ 5.  The logbook entry
> confirms that Defendant Barber conveyed this information and that
> Defendant Christopher was notified at 7:10 a.m.  Ex. F.  Defendant
> Christopher saw Plaintiff at approximately 7:50 a.m.  Christopher
> Dec. at ¶ 4.  Defendant Barber continued to observe Plaintiff until
> the conclusion of his shift at 3:00 p.m.  Barber Dec. at ¶ 8.  Plaintiff
> cut his arm after Defendant Barber finished his shift.  *Id.* at ¶ 7;
> Jean Dep. at 10.

*See id.* at 7.

Thereafter, Magistrate Judge Lowe recommended that the Court dismiss plaintiff's

Fourteenth Amendment claim because it "overlaps" with the Eighth Amendment claims and,

therefore, "'will be subsumed by the Eighth Amendment claim as the Eighth Amendment offers

greater protection to prisoners.'"  *See id.* at 8 (quotation and other citation omitted).  Finally,

Magistrate Judge Lowe declined to reach the qualified immunity issue because plaintiff failed to

establish any violations of his constitutional rights.  *See id.* at 8-9.

**C.     Plaintiff's objections to Magistrate Judge Lowe's Report-Recommendation and
         Order**

In his objections to Magistrate Judge Lowe's Report-Recommendation and Order, plaintiff puts forth the following seven arguments:

> 1) Plaintiff objects to the Report and Recommendation that summary judgment be granted to the Defendants.
>
> 2) Plaintiff objects to the deliberate indifference decision rendered by the Judge.  There are genuine issues of material fact which include but are not limited to the following:
>
>> A) Defendants presented no proof whatsoever that mental health staff was notified.
>>
>> B) Defendant Barber agrees that Plaintiff notified him on more than one occasion of his suicidal thoughts and need for assistance.
>
> 3) Defendant Barber failed to notify mental health staff as is the policy of DOCS.
>
> 4) Defendant Barber made numerous false and contradictory statements as to the monitoring of the Plaintiff.  *See* Affidavit in Opp. of Def. Summary Judgment Motion).
>
> 5) Defendant Barber left the Plaintiff in his cell.  There is no suicide log book.  No monitoring of Plaintiff as per DOCS Directive No. 4101 Section 4A(1), (2), (3), (4).
>
> 6) Defendant Sgt. Christopher never reported Plaintiff or referred Plaintiff to mental health.
>
> 7) The inference was drawn by the Def. Barber (*see* Exhibits I4 Mem. of Law).

*See* Dkt. No. 53 at 2-3.  Moreover, plaintiff asserts that he was never taken to a common area for supervision or suicide watch, even after he made defendants aware of his suicidal thoughts.  *See id.* at 3.  As such, plaintiff asserts that there are questions of material fact precluding summary judgment.  *See id.*

## III. DISCUSSION

**A.      Standard of review**

When a party files specific objections to a magistrate judge's report-recommendation, the

district court makes a "*de novo* determination of those portions of the report or specified proposed

findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  However,

when a party files "[g]eneral or conclusory objections or objections which merely recite the same

arguments [that he presented] to the magistrate judge," the court reviews those recommendations

for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16,

2011) (citations and footnote omitted).  After the appropriate review, "the court may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

judge."  28 U.S.C. § 636(b)(1).[3]

A court may grant a motion for summary judgment only if it determines that there is no

genuine issue of material fact to be tried and that the facts as to which there is no such issue

warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43

F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the

court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Id.* at

36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a

motion for summary judgment may not simply rely on the assertions in its pleading.  *See Celotex

Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the

court is required to resolve all ambiguities and draw all reasonable inferences in favor of the

nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[3] Despite the conclusory nature of most of plaintiff's objections, the Court will still person
a *de novo* review.

242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan v. Campbell*, 289 F. Supp. 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted).  "However, a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.      Deliberate indifference to a serious medical need**

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This includes the provision of medical care and punishments involving "the unnecessary and wanton infliction of pain."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted).  A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Hathaway*, 37 F.3d at 66.  More than

negligence is required "but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66.

The test for a § 1983 claim is twofold.  First, the prisoner must show that there was a sufficiently serious medical need.  *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  *See id.*  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (quotation omitted). Since there is no distinct litmus test, whether a medical condition is serious depends on certain factors, such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702).  The court should also judge the severity of the denial of care within the context of the surrounding facts and circumstances of the case.  *See Smith*, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  *Chance*, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle v. Gamble*, 429 U.S. 97, 104, (1976).

"Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. *Id* . at 703. Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

### 1. Objective prong

Plaintiff did not object to, nor does the Court find error with, Magistrate Judge Lowe's determination that plaintiff has satisfied the objective prong of his Eighth Amendment challenge. *See Hamilton v. Smith*, No. 9:06-cv-805, 2009 WL 3199531, *14 (N.D.N.Y. Jan. 13, 2003) (citing *Guglielmoni v. Alexander*, 583 F. Supp. 821, 826 (D. Conn.1984)); *see also Loadholt v. Lape*, No. 9:09-CV-658, 2011 WL 1135934, * 3 (N.D.N.Y. Mar. 3, 2011) (citing cases).

### 2. Subjective prong

Although plaintiff met his burden with respect to the objective prong of his Eighth Amendment claim, the Court finds that Magistrate Judge Lowe correctly determined that there is no genuine issue of material fact showing that defendants were deliberately indifferent to plaintiff's serious medical need.

Non-medical personnel may engage in deliberate indifference if they intentionally deny or delay access to medical care. *See Zimmerman v. Burge*, No. 9:06-cv-176, 2009 WL 3111429, *8 (N.D.N.Y. Sept. 24, 2009) (citation omitted); *see also Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999) (citations omitted). "Courts which have considered the issue have ruled that in the context of suicide, jailers are not required to safeguard every inmate; only those presenting a 'strong likelihood of suicide' are entitled to protection." *Burke v. Warren County Sheriff's Dept.*,

No. 90-CV-597, 1994 WL 6755042, *6 (citing *Schmelz v. Monroe County*, 954 F.2d 1540, 1545 (11th Cir. 1992); *Colburn v. Upper Darby*, 946 F.2d 1017, 1024 (3d Cir. 1991) (*Colburn II*); *Bell v. Stigers*, 937 F.2d 1340, 1343 (8th Cir. 1991); *Torraco v. Maloney*, 923 F.2d 231, 236 (1st Cir. 1991); *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989); *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988)).  "In order to establish a strong likelihood of suicide, a detainee must have made a previous threat or an earlier attempt at suicide."  *Id.* (citing *Elliott v. Cheshire County*, 940 F.2d 7, 11 (1st Cir. 1991) ("In the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation that has concluded that failing to prevent a suicide constitutes deliberate indifference"); *Buffington v. Baltimore County*, 913 F.2d 113, 119 (4th Cir. 1990) (holding that liability could not be premised on the officers' failure to act on a speculative suicide risk); *Rellergert v. Cape Girardeau County*, 724 F. Supp. 662, 666 (E.D. Mo. 1989) ("Obviously, in the absence of a previous threat or an earlier attempt at suicide, official misconduct in failing to prevent a suicide does not constitute deliberate indifference")).

In the present matter, the record does not indicate that plaintiff made any previous suicide threats.  Moreover, the record makes clear that defendants promptly responded to plaintiff's suicide threat, and that defendant Barber continued to observe plaintiff until the conclusion of his shift at 3:00 p.m.  *See* Dkt. No. 39-4 at ¶ 8.  Further, defendant Christopher stated that, when he interviewed plaintiff at 7:50 a.m., plaintiff indicated that he had no intention of harming himself.  *See* Dkt. No. 39-5 at ¶ 5.  Thereafter, defendant Christopher notified mental health personnel of plaintiff's original suicide threat to defendant Barber and the fact that he also told defendant Christopher that he had no intention of harming himself.  *See id.* at ¶ 6.  Defendant Christopher finished his shift at 3:00 p.m. and had no other contact with plaintiff on the day in question.  *See id.* at ¶ 7.

Contrary to plaintiff's assertions, this conduct does not constitute deliberate indifference and is in compliance with DOCS' Directive regarding suicide prevention. *See* Dkt. No. 39-3 at 44. Specifically, the directive requires non-medical personnel to notify mental health staff of an inmate who may be a suicide risk. *See id.* at § IV(A). Once notified, mental health staff must respond with an evaluation "**within one business day.**" *See id.* at § IV(B). Although such an evaluation had not yet occurred, defendant Barber continued to monitor plaintiff, despite the fact that he informed defendant Christopher that he no longer intended to commit suicide.

As Magistrate Judge Lowe correctly concluded, viewing the facts in the light most favorable to plaintiff, defendants' conduct does not rise to the level of deliberate indifference.[4] *See Kelsey v. City of New York*, 306 Fed. Appx. 700, 703 (2d Cir. 2009) (holding that, in the pretrial detainee context, "deliberate indifference [is] lacking where officers take affirmative and reasonable steps to protect detainees from suicide" (citations omitted)).

## C.    Plaintiff's Fourteenth Amendment claim

Plaintiff did not object to Magistrate Judge Lowe's conclusion that, "[w]here, as here, a plaintiff's Eighth Amendment and Fourteenth Amendment due process claims '"overlap," the due process claim will be subsumed by the Eighth Amendment claim as the Eighth Amendment offers greater protections to prisoners.'" *See* Dkt. No. 52 at 8 (quotations and other citation omitted).

The Court has reviewed this claim and finds that Magistrate Judge Lowe correctly determined that the claim should be dismissed. *See Felix-Torres v. Graham*, 521 F. Supp. 2d 157,

---

[4] Significantly, plaintiff's suicide attempt did not occur until after defendants were no longer on duty.

164 (N.D.N.Y. 2007) (quoting *Graham v. Connor*, 490 U.S. 386, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)).

## IV. CONCLUSION

After carefully considering Magistrate Judge Lowe's Report-Recommendation and Order, plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Lowe's June 28, 2011 Report-Recommendation and Order is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that defendants' motion for summary judgment is **GRANTED** and that plaintiff's complaint is **DISMISSED WITH PREJUDICE**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 21, 2011
      Albany, New York

Mae A. D'Agostino
U.S. District Judge